UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**EDRA D BLIXSETH**,

Debtor.

Case No. **09-60452-11**

*MEMORANDUM of DECISION*

At Butte in said District this 29th day of May, 2009.

In this Chapter 11 bankruptcy, after due notice, an expedited hearing was held May 29, 2009, on the United States Trustee's ("UST") Motion to Convert to Chapter 7 filed May 11, 2009, at docket entry number 131, together with Debtor's response thereto filed May 21, 2009, at docket entry number 159.[1] Attorney Daniel P. McKay of Great Falls, Montana appeared at the hearing on behalf of the UST. Debtor was represented at the hearing by her attorney of record, Gary Deschenes of Great Falls, Montana. In addition to the foregoing appearances, Jane Mersen of Bozeman, Montana appeared at the hearing on behalf of Stockman Bank of Montana; Harold

---

[1] In the Objection filed May 21, 2009, Debtor's counsel scheduled the matter for hearing on June 16, 2009. However, the UST filed on May 22, 2009, a Motion for Expedited Hearing requesting that the hearing on the UST's motion be heard prior to June 16, 2009. For good cause having been shown, the Court granted the UST's Motion for Expedited Hearing, and thus the hearing was moved from June 16, 2009, to May 29, 2009. The Court would also note that Western Capital Partners, LLC has a pending Motion to Reconsider Order and to Convert Case Pursuant to 11 U.S.C. § 1112(b) that was filed April 28, 2009, and is set for hearing on June 16, 2009.

1

V. Dye of Missoula, Montana appeared on behalf of Archer Capital Management; Elizabeth A. McGovern of Philadelphia, Pennsylvania appeared on behalf of Wachovia Bank, N.A.; Benjamin P. Hursh of Missoula, Montana appeared at the hearing on behalf of CrossHarbor Capital Partners, LLC; Teresa Whitney of Helena, Montana appeared on behalf of the State of Montana, Department of Revenue; Joe E. Edwards of Oklahoma City, Oklahoma appeared on behalf of Casa Captiva, LLC and Bruce Erickson; and Martin S. Smith of Billings, Montana appeared on behalf of Palm Desert National Bank. No exhibits were offered into evidence, but the Court heard testimony from Lawrence C. Rezentes and the Debtor, Edra D. Blixseth.

## FACTUAL BACKGROUND

Debtor filed a voluntary Chapter 11 bankruptcy petition on March 26, 2009. Debtor filed her Summary of Schedules, Schedules and Statement of Financial Affairs on April 29, 2009. Included in Debtor's Schedules is a "Notice to Advise of No Payment Advices § 521(a)(1)(B)(iv)" in which Debtor states that "she has no payment advices or other evidence of payment received from any employer to provide to the Court." Debtor also filed a Form B22B, Chapter 11 Statement of Current Monthly Income, which lists Debtor's "Total current monthly income" as $0.00.

Debtor's Summary of Schedules reflects that Debtor's assets have a total value of $106,981,315.00, while Debtor's liabilities total $157,720.567.07. With respect to real property assets, Debtor's Schedule A identifies the following:

| Description of Property | Current value | Amount of secured claim |
|---|---|---|
| 185 ANDESITE RIDGE ROAD, BIG SKY, MONTANA. MORE PARTICULARLY DESCRIBED AS FOLLOWS: LOT 48, OF YELLOWSTONE MOUNTAIN CLUB SUBDIVISION, PHASES 1 AND 2, IN MADISON COUNTY, MONTANA, ACCORDING TO THE OFFICIAL PLAT THEREOF ON FILE AND OF RECORD IN THE OFFICE OF THE CLERK AND RECORDER, MADISON COUNTY, MONTANA. (PLAT REFERENCE IN BOOK 4 OF PLATS, PAGE 408, RECORDS OF MADISON COUNTY, MONTANA) | $7,200,000.00 | $6,199,418.07 |
| FAMILY COMPOUND AT YELLOWSTONE MOUNTAIN CLUB PHASE 1 & 2, SECTION 7, TOWNSHIP 7 SOUTH, RANGE 3 EAST, LOT 1A, AMENDED COS 7/1544, MADISON COUNTY, MONTANA (2 SMALL GUEST CABINS AND 160 ACRES) | $20,000,000.00 | $20,000,000.00 |
| 18 KING EDWARD COURT, RANCHO, MIRAGE, CA | $650,000.00 | $650,000.00 |
| CONDOMINIUM LOCATED AT 650 BELLEVUE WAY NE, #2304, BELLEVUE, WA | $2,000,000.00 | $2,000,000.00 |
| CONDOMINIUM LOCATED AT 76620 HOLLYHOCK DRIVE, PALM VALLEY, CA | $150,000.00 | $150,000.00 |
| 42391 RANCHO LAS PALMAS, UNIT 23, RANCHO MIRAGE, CA | $100,000.00 | $100,000.00 |
| 71361 GARDESS ROAD, RANCHO MIRAGE, CA PROPERTY IS OWNED BY TIM BLIXSETH AND EDRA BLIXSETH AS JOINT TENANTS | $375,000.00 | $375,000.00 |
| 71621 GARDESS ROAD, RANCHO MIRAGE, CA | $300,000.00 | $300,000.00 |

Debtor's Schedule B also lists various categories of assets, including $6 million in furniture, furnishings & equipment at Porcupine Creek, $2,691,000.00 of fine art, $150,000.00 in clothing, $30,033.00 of furs and $469,515.00 in jewelry. Debtor's Schedule B also includes the following vehicles: 1993 Mercedes 500 SL valued at $11,000.00; 2000 Mercedes SL 500 valued at $20,500.00; 2004 Rolls Royce Phantom valued at $175,000.00; 2006 Aston Martin valued at $120,000.00; and a 2007 BMW 760 IL valued at $77,000.00.

Similar to her Chapter 11 Statement of Current Monthly Income, Debtor's Schedule I

reflects that Debtor has no monthly income. Debtor's Schedule J lists average monthly expenses of $2,900.00.

The record in this case reflects that the Court entered a Memorandum of Decision and Order on May 11, 2009, granting a motion to modify stay filed by Archer Capital Fund, LP on grounds that Archer Capital Fund, LP was not adequately protected with respect to a 2004 Rolls Royce, 2006 Aston Martin, 2007 BMW or a 2004 Land Rover. The Court also found that such vehicles were not necessary for Debtor's effective reorganization. In the Memorandum of Decision, the Court also noted that "Archer satisfied its burden to show that the Debtor failed to maintain comprehensive insurance on Archer's security when the Debtor admitted that the four vehicles were not insured on the petition date, and that as of the hearing date they were not covered by comprehensive collision insurance."

As noted above, the UST's motion was filed on May 11, 2009, and lists three grounds for conversion, namely, that Debtor failed to pay the fee required by 28 U.S.C. § 1930(a)(6) for the first quarter of 2009; that Debtor failed to comply with the requirements of Rule 2015.3 F.R.B.P. by filing "periodic financial reports of the value, operations, and profitability of each entity that is not a publicly traded corporation or a debtor in a case under title 11, and in which the estate holds a substantial or controlling interest" for her 14 related entities; and finally, that Debtor had failed to provide the UST with proof of insurance on a significant amount of her assets despite repeated requests. Counsel for the UST represented at the hearing that Debtor has since paid her quarterly fees. Counsel for the UST also stated that Debtor filed her related entity reports on the eve of the hearing, and thus, the UST was withdrawing his request for conversion on that basis, but wanted to reserve the right to refile in the event Debtor's related entity reports were not adequate.

As for the insurance issue, Debtor, in her Objection filed May 21, 2009, stated that "[w]hile the Debtor has provided some insurance information, she agrees that she needed to file more and she is in the process of obtaining those for the U. S. Trustee's Office. She also believes that all of these will be filed with the UST's office within one week of the date of this response." Lawrence C. Rezentes ("Rezentes"), a bankruptcy analyst for the UST, testified that the UST's first request for proof of insurance from the Debtor was made by letter dated March 27, 2009. Following the March 27, 2009, letter, Rezentes sent Debtor's counsel four separate emails in April and May trying to ascertain whether Debtor's assets were properly insured. Rezentes also telephoned Debtor's counsel's office and spoke to "Lisa" who informed Rezentes that she was expecting to obtain Debtor's insurance information that day and would forward such information to the UST. Rezentes testified that the insurance information "never came."

Instead, Rezentes began receiving Debtor's insurance information after business hours on the eve of the May 29, 2009, hearing. Rezentes testified that he tried to review all the information prior to the hearing and concluded that with respect to the property located at 185 Andesite Ridge Road, Big Sky, Montana, it appeared from copies of emails, that Stockman Bank was taking steps to have insurance placed on such property. However, nothing in the information provided to Rezentes showed that the property was actually insured. Similarly, with respect to the real property described in Debtor's Schedule A as the Family Compound at the Yellowstone Mountain Club, Rezentes testified that he received a draft letter that outlined CrossHarbor Capital Partners, LLC's intent to obtain insurance on that asset. Rezentes also testified that Debtor's condominiums were insured only through the condominium association and were not insured separately by Debtor, even though Debtor testified that the condominiums were

previously insured above and beyond the insurance provided by the condominium association.

With respect to Debtor's $6 million of personal property at Porcupine Creek, Rezentes testified that Debtor had provided a certificate of insurance that named CIP Yellowstone Lending as the insured. From what the Court understands, CIP Yellowstone Lending is an affiliate of CrossHarbor Capital Partners. While Debtor owes CrossHarbor Capital Partners approximately $35 million, Debtor has no affiliation with CIP Yellowstone Lending. Rezentes saw nothing in the information provided by Debtor which shows that Debtor's fine art, clothing, furs or jewelry are insured. Finally, Debtor failed to obtain adequate insurance on her five vehicles until April 2009 and in the case of the BMW, did not obtain adequate insurance until May 20, 2009.

Debtor testified that she fully understood the critical need to have insurance on all her assets, but explained that it was only after several requests by the UST that she discovered that her assets were not insured as she expected. Debtor explained that she only obtained access to her records in August of 2008 and that because she had to layoff her staff, she simply was not able to timely assemble the information requested by the UST. Debtor characterized the UST's request for proof of insurance as a "blessing" because only after the request did Debtor discover that her ex-spouse had cancelled insurance on the properties that were awarded to Debtor under the terms of the marital settlement agreement.

Debtor went on to explain that her goal in this Chapter 11 case was to take care of everyone. Debtor explained that her plan would be more clear when various items were presented to the Court the week of June 8th. Debtor stated that she was working with various of her creditors to "right the ship a little better" by shifting some assets and liabilities. Debtor also testified that she intended to "monetize" some of her assets in order to fund her plan.

6

APPLICABLE LAW

Prior to enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. 109-8 Stat. 23 § 442 (Apr. 20, 2005), § 1112(b) provided that a court "may" convert or dismiss a Chapter 11 case for cause. Subsequent to the enactment of BAPCPA, it appears that the Court's discretion with respect to conversion or dismissal has been circumscribed. As explained in 7 COLLIER ON BANKRUPTCY, ¶ 1112.04[3] (15th ed. rev.):

> As amended in 2005, section 1112(b) provides further direction in guiding the court's discretion. To begin with, section 1112(b)(1) directs that the court must convert or dismiss the case if the movant establishes cause unless the court determines that unusual circumstances exist and the court enumerates the circumstances. Although section 1112(b) does not define the phrase "unusual circumstances," it clearly contemplates conditions that are not common in most chapter 11 cases. Although each chapter 11 case is to some extent unique, and unusual circumstances may exist in any particular case regardless of its size or complexity, the import of section 1112(b) is that, if cause exists, the case should be converted or dismissed unless unusual facts or circumstances demonstrate that the purposes of chapter 11 would be better served by maintaining the case as a chapter 11 proceeding.
>
> In addition, section 1112(b)(1) directs that the court must convert or dismiss the case for cause unless the appointment of a chapter 11 trustee would be in the best interests of creditors and the estate. Under section 1104(a)(3), the court is directed to appoint a trustee if cause exists to convert or dismiss a chapter 11 case and doing so would be in the best interests of creditors and the estate. Notably, when sections 1104(a)(3) and 1112(b) are read together, it seems clear that the court *must* appoint a chapter 11 trustee rather than convert or dismiss the case if section 1104(a)(3) applies. Neither section 1104(a)(3) nor 1112(b) defines what constitutes the "best interests of creditors and the estate." This phrase, however, has long been used in section 1112 and courts have considered a number of factors in applying it.
>
> Finally, section 1112(b)(2) creates an exception to section 1112(b)(1) by directing that, absent unusual circumstances, the court must *not* convert or dismiss the case if (1) there is a reasonable likelihood that a plan will be confirmed within the time frames specified in subsection 1112(b)(2), (2) the grounds for converting or dismissing the case include an act or omission by the

debtor other than substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation and (3) there exists a reasonable justification for the act or omission, and the act or omission will be cured within a reasonable time fixed by the court. In establishing the time frames for confirmation of a plan, section 1112(b)(2) refers to sections 1121(e) and 1129(e), providing deadlines for the filing and confirmation of plans in small business cases. If the case is not a small business case, the time frame is designated as "a reasonable period of time." If the movant establishes cause to convert or dismiss the case for substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation, then section 1112(b)(2) does not apply. If the movant demonstrates cause to convert or dismiss the case for a reason other than substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation, then the court must consider whether there exists a reasonable justification for the act or omission constituting cause for conversion and dismissal, as well as whether the act or omission can be cured within a reasonable time fixed by the court. Yet if cause for conversion or dismissal exists because the debtor filed its chapter 11 case in bad faith, then section 1112(b)(2) would not apply because, by determining that the debtor filed the case in bad faith, the court would foreclose a reasonable justification for the filing. In addition, a bad faith determination would likely constitute "unusual circumstances" demonstrating that section 1112(b)(2) should not be applied. If the court declines to apply section 1112(b)(2) on the basis of the existence of unusual circumstances, the court must enumerate those circumstances.

## DISCUSSION

The evidence in this case shows that the majority, if not all, of Debtors assets were either not insured or were woefully under-insured on her petition date. The evidence also shows that a substantial portion of Debtor's assets remained uninsured as of the date of the May 29, 2009, hearing. Debtor's plan to provide insurance on such assets was to rely on the various secured creditors to put forced placed insurance on their particular collateral. Moreover, Debtor's summary of schedules and her individual schedules reflect that Debtor has very little, if any, equity in her assets. Thus, the Court concludes that the UST has established cause for the conversion or dismissal of this case.

Notwithstanding such cause, Debtor can defeat conversion by showing: (1) unusual circumstances establishing that conversion or dismissal is not in the best interest of creditors and the estate, § 1112(b)(1); or (2) absent unusual circumstances, Debtor can: (a) show a reasonable likelihood that a Chapter 11 plan will be confirmed within a reasonable period of time; (b) provide a reasonable justification for Debtor's failure to maintain adequate insurance; and (c) show that she will obtain adequate insurance within a reasonable period of time fixed by the Court, § 1112(b)(2). The other alternative to conversion or dismissal is the appointment of a trustee if such appointment would be in the best interest of creditors and the estate. 11 U.S.C. §§ 1112(b)(1) and 1104(a)(3).

As noted earlier, the UST has satisfied his burden by establishing cause, as defined in § 1112(b)(4)(C), for dismissal or conversion under § 1112(b)(1). The Court's inquiry must now turn to whether unusual circumstances show that dismissal or conversion is not in the best interest of creditors or the estate. Debtor argues that her intent is to fund a Chapter 11 plan that will pay all creditors in full and that if this case is converted to Chapter 7 of the Bankruptcy Code, unsecured creditors will receive nothing. Debtor thus maintains that there is no benefit gained to the creditors of the estate from a conversion of this case to Chapter 7.

The Court has insufficient information at this time to determine whether unsecured creditors may or may not benefit from the conversion of this case. However, that is no longer the question under § 1112(b). The question is whether this Court can articulate unusual circumstances that show that either conversion or dismissal is not in the best interest of the creditors. The answer to the foregoing question is a resounding "no".

In this case, conversion to Chapter 7 of the Bankruptcy Code will allow for the appointment of a Chapter 7 Trustee who can liquidate Debtor's assets in an expeditious manner, perhaps to the benefit of all creditors. The conversion of this case to Chapter 7, as opposed to the appointment of a trustee under § 1112(b) and § 1104(a)(3), would also better serve the creditors in this case, where the Debtor has no ongoing business to preserve. In addition, the creditors would not be burdened with the higher fees associated with the administration of a Chapter 11 case.

Given the absence of unusual circumstances, the Court's final focus now shifts to whether Debtor has shown a reasonable likelihood that a Chapter 11 plan will be confirmed within a reasonable period of time; has provided a reasonable justification for Debtor's failure to maintain adequate insurance; and has shown that she will obtain adequate insurance within a reasonable period of time fixed by the Court. To date, Debtor has not filed a disclosure statement or a Chapter 11 plan and no evidence exists before the Court to suggest that Debtor's plan will or will not be confirmed within a reasonable period of time. Additionally, in attempting to explain why she has not maintained adequate insurance on her assets, Debtor demonstrated that she simply does not have any funds available to obtain adequate insurance within any time frame.

Debtor cannot enjoy the benefits of Chapter 11 and refuse to accept the burdens attendant thereto. In this case, Debtor has not made an honest effort to protect that assets of the bankruptcy estate. Debtor's failure to maintain adequate insurance on her assets places all parties at risk. By failing to adequately protect assets, Debtor has abused the bankruptcy process for her own benefit without accepting any of the responsibilities required by the Bankruptcy Code and Rules.

For the reasons discussed above, I find that conversion of this case to Chapter 7 of the Bankruptcy Code, and appointment of a Chapter 7 trustee to administer the assets of Debtor's bankruptcy estate, is in the best interest of Debtor's creditors. Thus, consistent with this Memorandum of Decision and the Court's oral ruling made from the bench, the Court will enter a separate order providing as follows:

IT IS ORDERED that the United States Trustee's Motion to Convert to Chapter 7 filed May 11, 2009, at docket entry number 131, is GRANTED; and this case is converted to Chapter 7 of the Bankruptcy Code.

BY THE COURT

/s/ Ralph B. Kirscher

HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana