## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MONTANA

In re

**EDRA D BLIXSETH**,

Debtor.

Case No. **09-60452-7**

### *MEMORANDUM of DECISION*

At Butte in said District this 10th day of August, 2011.

In this bankruptcy case, after due notice, the Court held a hearing on May 17, 2011, in Butte on Debtor Edra Blixseth's Motion for Affirmation that Retainer Is Not Property of the Estate filed April 1, 2011, at docket entry no. 932, and the Chapter 7 Trustee's Opposition to Motion for Affirmation that Retainer Is Not Property of the Estate filed April 18, 2011, at docket entry no. 955.  Debtor Edra Blixseth ("Debtor") was represented at the hearing by Gary Deschenes ("Deschenes") of Great Falls, Montana; Richard Samson, the Chapter 7[1] Trustee ("Trustee"), was represented at the hearing by David Cotner of Missoula, Montana.  The Court heard oral argument from counsel.  Debtor testified, but no exhibits were offered into evidence. This memorandum contains the Court's findings of fact and conclusions of law.

### BACKGROUND

Debtor filed an emergency Chapter 11 petition on March 26, 2009.  Her application to employ Deschenes was filed on April 1, 2009, and approved by this Court on April 16, 2009.

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101 - 1532, and all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001 -9037.

1

Prior to and immediately after Debtor's petition was filed, several of her acquaintances (collectively "Payors") paid money directly to Deschenes as prepayment of Debtor's legal fees. Debtor testified that she never solicited the funds and did not provide the Payors with any information about Deschenes. None of the Payors were creditors in this bankruptcy case. Debtor never signed any promissory notes requiring her to repay the funds. Those Payors, the date of their payment, and the amount of each payment are as follows:

| Date | Payor | Amount |
|---|---|---|
| 3/16/2009 | Elizabeth S. Wright | $7,000 |
| 3/20/2009 | Harfen Holdings Limited | $8,000 |
| 3/20/2009 | Gary and Yucca Rieschel | $5,000 |
| 3/23/2009 | Darrell W. Crate | $2,500 |
| 3/23/2009 | T. Neal Attenborough | $2,500 |
| 3/25/2009 | Joy Craft Ttee the 2000 Joy | $5,000 |
| 3/26/2009 | Gary and Yucca Rieschel | $5,000 |
| 3/26/2009 | Laura Ann Winning | $2,500 |
| 3/27/2009 | Steve Wiggins | $5,000 |
| 3/27/2009 | Robert P. Inches | $3,000 |
| 3/27/2009 | Elizabeth S. Wright | $3,000 |
| 3/30/2009 | Thomas P. Smith | $3,000 |
| | Total | $51,500 |

Each wire transfer was subject to a ten-dollar fee by Deschenes's bank, reducing the total by $120. After subtracting bank fees, Deschenes received $37,420 prepetition, and $13,960 postpetition, for a total of $51,380. Deschenes charged the Debtor for $4,013 in prepetition legal services and $1,039 for the Chapter 11 filing fee, reducing the total in Deschenes's trust account

2

to $46,328. The Court considers that $46,328 to be the retainer in controversy.

Deschenes originally believed that the funds had been given to Debtor, who then paid them to Deschenes, and Debtor's original Statement of Financial Affairs and 2016(B) Disclosure statement reflected that belief. Deschenes subsequently learned that the funds had been wired directly to his firm, and on June 12, 2009, he amended Debtor's Statement of Financial Affairs, 2016(B) Disclosure, and Employment Contract and Retainer Agreement to reflect the correct information.

The case was converted from Chapter 11 to Chapter 7 on May 29, 2009. Subsequently, the newly-appointed Trustee requested Deschenes turn over the funds as property of the estate. Deschenes stated he believed the funds were not property of the estate. Trustee and Debtor then entered a stipulation on July 10, 2009 that the contested funds would be held in Trustee's trust account pending a decision on this Motion.[2] Trustee has held these funds in a separate interest-bearing account since then, pending the Court's determination of whether the funds are property of Debtor's bankruptcy estate.

Debtor filed the Motion for Affirmation that Retainer is Not Property of the Estate on April 1, 2011. Trustee filed his objection to the motion on April 18, 2011. Debtor argued that the funds did not belong to her, but rather to the Payors. Alternatively, Debtor argued that even if the funds belong to her, some of the funds were transferred after she filed her voluntary petition, and therefore were not property of the estate. Trustee argued that the funds were a gift to Debtor, and that Debtor controlled the funds because she solicited the funds and gave her friends the

---

[2] Trustee and Debtor were not the only parties to the stipulation, nor was the agreement about these funds the only topic covered. However, none of the other parties or topics are relevant to this motion.

information to know where to send the money.

## APPLICABLE LAW and DISCUSSION

**I.      Jurisdiction**

Federal district courts have original and exclusive jurisdiction of cases arising under title 11, and original but not exclusive jurisdiction of "civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. §§ 1334(a), (b).  However, district courts may refer all such proceedings to bankruptcy courts.  28 U.S.C. § 157(a).  The United States District Court for the District of Montana has made such a reference by Standing Order 12, (Revised).

Bankruptcy courts have jurisdiction under 28 U.S.C. § 157(b)(1) to "hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11."  Section 157(b)(2) of title 28 provides a non-exhaustive list of core proceedings, but does not explicitly include determinations of whether property belongs to the bankruptcy estate. However, the Ninth Circuit has provided direction for determining when a proceeding is core:

> If a claim is not listed explicitly in § 157(b)(2) as a "core proceeding[ ]," we "consider[ ] factors such as whether the rights involved exist independent of title 11, depend on state law for their resolution, existed prior to the filing of a bankruptcy petition, or were significantly affected by the filing of the bankruptcy case."

*Johnston Envtl. Corp. v. Knight (In re Goodman)*, 991 F.2d 613, 617 (9th Cir. 1993) (quoting *Taxel v. Elec. Sports Research (In re Cinematronics, Inc.)*, 916 F.2d 1444, 1450 n.5 (9th Cir.1990)).  An action to decide whether property belongs to the bankruptcy estate would not exist independently or prior to the bankruptcy filing, as the estate would not exist independent of the filing, *see* 11 U.S.C. § 541(a), but determination of a debtor's legal and equitable rights in

property depends on state law, *McCarthy, Johnson & Miller v. N. Bay Plumbing, Inc. (In re Pettit)*, 217 F.3d 1072, 1078 (9th Cir. 2000). The Ninth Circuit has recognized that "determining the nature and extent of property of the estate is also a fundamental function of a bankruptcy court.... [and] fundamental to the administration of a bankruptcy case." *John Hancock Mut. Life Ins. Co. v. Watson (In re Kincaid)*, 917 F.2d 1162, 1165 (9th Cir. 1990). Because core proceedings include "matters concerning the administration of the estate," 28 U.S.C. § 157(b)(2)(A), this Court has jurisdiction to hear and decide this core proceeding under 28 U.S.C. §§ 1334 and 157(b)(2)(A).

## II.   Property of the Estate

Trustee argues that the funds are gifts to Debtor and therefore property of the estate, while Debtor disagrees. The bankruptcy estate consists of a debtor's property "wherever located and by whomever held," including "all legal and equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). In the case of an individual who filed under Chapter 11, property of the estate also includes property that under § 541 would be property of the estate, but which was acquired after the commencement of the case but before the case was closed, dismissed or converted. 11 U.S.C. § 1115(a)(1). The Ninth Circuit has clarified analysis of what qualifies as property of the estate, stating:

> Although the question whether an interest claimed by the debtor is "property of the estate" is a federal question to be decided by federal law, bankruptcy courts must look to state law to determine whether and to what extent the debtor has any legal or equitable interests in property as of the commencement of the case.

*In re Pettit*, 217 F.3d at 1078 (citing *Butner v. United States*, 440 U.S. 48, 54-55 (1979)). Therefore, state law governs whether the transfers of funds by Debtor's friends were gifts to

5

Debtor.

  **A.**  **Choice of Law**

  In bankruptcy cases, the courts apply federal choice of law rules, which follow the approach of the Restatement (Second) of Conflict of Laws. *Liberty Tool & Mfg. v. Vortex Fishing Sys., Inc. (In re Vortex Fishing Sys., Inc.)*, 277 F.3d 1057, 1069 (9th Cir. 2002). However, when applying the law of either possible state would produce the same outcome, a conflict of laws analysis becomes unnecessary, presenting what is known as a "false" conflict of laws. *Gianaculas v. Trans World Airlines, Inc.*, 761 F.2d 1391, 1393 (9th Cir. 1985).

  Here, only two states' laws are candidates to be applied:[3] California, where Debtor resided at the time of the transfers of funds, and Montana, where the funds were transferred and where the Debtor's bankruptcy case is pending. Applying either Montana and California law would result in the same outcome. Montana law defines a gift as "a transfer of personal property made voluntarily and without consideration." MONT. CODE ANN. ("MCA") § 70-3-101. An *inter vivos* gift requires 1) donative intent, 2) voluntary delivery, and 3) acceptance by the recipient. *Albinger v. Harris*, 2002 MT 118, ¶ 31, 310 Mont. 27, 37, 48 P.3d 711, 718. "Delivery, which manifests the intent of the giver, must turn over dominion and control of the property to the recipient." *Id.* Donative intent "may be defeated if there is fraud, duress, undue influence or mental incapacity." *In re Marriage of Lance*, 195 Mont. 176, 183, 635 P.2d 571, 575 (1981). California law requires: "(1) competency of the donor to contract; (2) a voluntary intent on the part of the donor to make a gift; (3) delivery, either actual or symbolical; (4)

---

[3] Presumably, additional possibilities exist, including the residences of the individual donors, or the locations of the funds at the time of transfer. However, because neither party presented any facts regarding those locations, it is impossible for this Court to consider them.

acceptance, actual or imputed; (5) complete divestment of all control by the donor; and (6) lack of consideration for the gift." *Burkle v. Burkle*, 141 Cal. App. 4th 1029, 1036 n.5, 46 Cal. Rptr. 3d 562, 567 n.5 (Cal. Ct. App. 2006) (quoting *Jaffe v. Carroll*, 35 Cal. App. 3d 53, 59, 110 Cal. Rptr. 435, 439 (Cal. Ct. App. 1973)). Because the elements to establish a gift are the same under California law and Montana law, this is a false conflict of laws issue.

B. **Montana Law Regarding Gifts**

In determining whether the transfers of funds constitute a gift to Debtor, the only element at issue is whether the donors completely divested themselves of control of the funds, as the Debtor and the Trustee have not raised any question regarding the remaining elements. The burden of establishing a gift is on the person claiming it. *In re Brown's Estate*, 122 Mont. 451, 458, 206 P.2d 816, 820 (1949). Complete control of a gift must be vested with the recipient, beyond the recall of the donor. *Id.* at 458, 206 P.2d at 820. When the donor has failed to divest himself of control of the property, the transfer does not qualify as a gift. *Estate of Parini v. Montana Dept. of Revenue*, 279 Mont. 85, 92, 926 P.2d 741, 745-46 (1996). For instance, if the donor transfers property such that he remains a joint tenant, there has been no gift because the donor retains control. *Id.* "Generally a donor must go as far as the nature of the property and the circumstances reasonably permit in parting with dominion and making the gift irrevocable." *In re Brown's Estate*, 122 Mont. at 458, 206 P.2d at 820.

The Payors sufficiently divested themselves of control of the funds to constitute a gift to Debtor under Montana law. In Debtor's Amended Employment Contract and General Retainer Agreement, at docket no. 235, Debtor and Deschenes agreed that Deschenes would return any remaining retainer funds to Debtor. Because the remaining retainer would revert to Debtor rather

than the Payors, the Payors effectively divested themselves of any control over the funds in the future. Once the funds were transferred to Deschenes, the funds were beyond the recall of the Payors. As the Payors no longer had any control over the funds, they made a valid gift to Debtor.

### C. Property Received by Individual in Chapter 11 Bankruptcy

Debtor argues that even if the funds received by Deschenes prior to filing are property of the estate, those funds received after are not. Indeed, § 541(a)(1) provides that "all legal or equitable interests of the debtor in property as of the commencement of the case" are property of the estate. However, § 1115(a)(1) further supplements that definition for individuals filing under Chapter 11, adding that the property of the estate also includes "all property of the kind specified in section 541 that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13, whichever occurs first."

The Payors gave Debtor $37,420 by the date she filed her petition for bankruptcy on March 26, 2009. However, Debtor paid $5,052 to Deschenes to cover prepetition legal fees and the Chapter 11 filing fee, which was subtracted from Deschenes's trust account. Therefore, $32,328 remained in the trust account at the commencement of the case, and became property of the estate pursuant to § 541. The Payors gave Debtor an additional $13,960 after she filed her voluntary Chapter 11 petition but before her case was converted to a case Chapter 7; those funds also became property of the estate, pursuant to § 1115. Therefore, the remaining $46,328 transferred by Payors to Deschenes on Debtor's behalf are property of the estate.

### D. Security Interest

While the disputed retainer funds are property of the estate, they are also encumbered by a security interest held by Deschenes. MCA § 37-61-420(2) provides:

> From the commencement of an action or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon the client's cause of action or counterclaim that attaches to a verdict, report, decision, or judgment in the client's favor and the proceeds of the action or counterclaim.

That lien attaches to the cause of action asserted, not merely the "verdict, report, decision or judgement." *In re Arctic Windows*, 15 Mont. B. R. 382, 385 (Bankr. D. Mont. 1996) (citing *Baker v. Tullock*, 106 Mont. 375, 77 P.2d 1035, 1036 (1938)). Indeed the lien attaches to "not only the result which may be obtained, but in a case such as a reorganization in bankruptcy or an administrative proceeding before a regulator agency, to any retainer deposited with counsel to ensure payment of fees." *In re Arctic Windows*, 15 Mont. B.R. at 386.

Additionally, the nature of the attorney's retainer may also create a security interest in the retainer. A client may designate a retainer as 1) a classic retainer, 2) a security retainer, or 3) an advance payment retainer. *Rus, Miliband & Smith, APC v. Yoo (In re Dick Cepek, Inc.)*, 339 B.R. 730, 736 (9th Cir. BAP 2006). "A security retainer is generally held as security for payment of fees for future services to be rendered by the attorney. The retainer remains property of the client . . . until the attorney applies it to charges for services actually rendered." *Id.* (citation omitted). "Advance fee retainers differ from security retainers in that *ownership* of the funds is intended to pass to the attorney at the time of payment." *In re Arctic Windows*, 15 Mont. B.R. at 384 (quoting *In re Renfrew Center of Florida Inc.*, 195 B.R. at 338-39). Montana Rule of Professional Conduct 1.16(d), which requires attorneys to return "any advance payment of fee that has been unearned," implies that ownership of unearned portions of the retainer remains with the client in the absence of express provisions to the contrary, creating a presumption that any retainer is a security retainer. *Id.* at 385. A security retainer becomes a perfected security interest

9

by virtue of perfection by possession. MCA § 30-9A-313; *see also In re Burnside Steel Foundry Co.*, 90 B.R. 942, 944 (Bankr. N.D. Ill 1988).

If an attorney establishes a valid security interest through either a lien or a security retainer, that security interest must be satisfied before the debtor's exemption, and before any distribution of the property under § 726. *In re Dick Cepek, Inc.*, 339 B.R. at 737.[4] To require disgorgement of security retainers would "undermine the purpose of retainers and chill the willingness of many professionals to undertake representation of Chapter 11 debtors." *In re N. Bay Tractor, Inc.*, 191 B.R. 186, 188 (Bankr. N.D. Cal. 1996). However, even if Deschenes holds a secured interest in the retainer, Deschenes must submit an application for court approval of his fees. *In re Printing Dimensions, Inc.*, 153 B.R. 715, 719 (Bankr. D. Md. 1993). *See also Cristopher v. Mir (In re BOH! Ristorante, Inc.)*, 99 B.R. 971 (9th Cir. BAP 1989) (holding that a debtor's attorney must receive an authorization for employment under § 327 and an approval of fees under § 329, regardless of the source of payment).

In the case sub judice, Deschenes held a security retainer as well as a valid attorney's lien upon the cause of action. Deschenes's contract did not specify that the retainer was a general retainer or an advance payment, rendering it a security retainer under *In re Arctic Windows*. Deschenes's statutory attorney's lien on the retainer was established when he began working on

---

[4] While the Ninth Circuit Bankruptcy Appellate Panel specifically holds prepetition security retainers may not be disgorged, this Court sees no substantive difference between prepetition security retainers and court-approved postpetition security retainers paid by a debtor-in-possession. Indeed, in *In re Burnside Steel Foundry Co.*, 90 B.R. 942, (Bankr. N.D. Ill. 1988), suggests a prepetition retainer and a "postpetition retainer authorized by court order" both create a possessory security interest in cash. Since Debtor included notice of the postpetition retainer in her amended Employment Contract and General Retainer Agreement, this Court sees no reason to treat those funds differently than the prepetition retainer.

the case for Debtor prepetition, and continued working for her postpetition. Since the funds were paid directly to Deschenes, who held them in his trust account, Deschenes's security interest in them was perfected by possession. Therefore, Deschenes holds a valid security interest in the retainer. Deschenes may submit applications for payment of fees from the encumbered retainer.

For the reasons discussed above, the Court will enter a separate order providing as follows:

IT IS ORDERED that Debtor Edra Blixseth's Motion for Affirmation that Retainer Is Not Property of the Estate filed April 1, 2011, at docket entry no. 932, is DENIED.

BY THE COURT

/s/ Ralph B. Kirscher
HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana